# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **ROBERT A. MOHR,** | } |
| **Plaintiff,** | } |
| v. | }  Case No.: 7:15-CV-01365-RDP |
| **CAROLYN W. COLVIN, Acting** | } |
| **Commissioner of Social Security,** | } |
| **Defendant.** | } |

## MEMORANDUM OF DECISION

Plaintiff Robert A. Mohr brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claims for a period of disability and disability insurance benefits ("DIB"). *See also* 42 U.S.C. § 405(g). After careful review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.    Proceedings Below

Plaintiff alleges a disability onset date of July 25, 2012, and filed his application for a period of disability and DIB on October 2, 2012. (R. 56, 123-126). Plaintiff's application was initially denied on November 7, 2012. (R. 73-77). On November 20, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. 80-81). Plaintiff's request was granted and a hearing was held on January 22, 2014. (R. 20-47). Plaintiff's attorney, Mr. Clark, made an opening argument that was followed by testimony from Plaintiff and the vocational expert ("VE"). *Id*.

In his March 6, 2014 decision, the ALJ determined Plaintiff was not eligible for disability and DIB, because he failed to meet the disability requirements of the Act and retained the residual functional capacity ("RFC") to perform sedentary work with some limitations. (R. 66). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision on June 30, 2015, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review. (R. 1). 42 U.S.C. §§ 405(g) and 1383(c).

## II.     Facts

Plaintiff was 43 years old at the time of the hearing, had at least a high school education and was able to communicate in English. (R. 67). Plaintiff alleges he has been unable to engage in substantial gainful activity since July 25, 2012. (R. 63, 123-126).[1] Prior to his alleged onset date of disability, Plaintiff worked as a warehouse worker and forklift operator. (R. 67, 26-27). He described his job as involving "very heavy work" which involved lifting, running a crane and fork lift, and climbing in and out of a tall forklift. (R. 27). He is able to care and groom himself, as well as fix simple meals, drive a car, grocery shop with assistance, and care for his sixteen-year old daughter. (R. 36-39, 66). Plaintiff alleges disability based on the following conditions: degenerative disc disease in his cervical spine, osteoarthritis in his right knee, a painful bladder condition, high blood pressure, high cholesterol, and acid reflux. (R. 65).

Plaintiff has a history of musculoskeletal pain. (R. 63-67). He was evaluated Dr. Robert S. Ghivan, a neurosurgeon, on May 11, 2010. (R. 203). It was determined he was suffering from severe cervical radiculopathy and an MRI showed significant disc herniations at his C5-C6 and C6-7, and "significant right C6 and C7 nerve root impingement." (*Id.*). Plaintiff underwent his

---

[1] Plaintiff did receive profit sharing bonus and disbursement of vacation and sick pay from former employer. The ALJ determined that these earnings did not constitute as substantial gainful activity. (R. 63, 137-143).

first neck surgery on May 14, 2010.[2] (R. 220-224). He then had a second surgery on his neck by a different surgeon approximately nine months after his first surgery.[3] (R. 28). This was eventually followed by his third and final neck surgery by Dr. Ghivan.[4] (R. 214). Plaintiff claims to have (1) made little progress after his last neck surgery and (2) experienced significant continuing pain. (R. 29-34). He has pain in his neck that radiates through his arms and hands, and claims to only be able to lift slightly heavy objects for a short period of time. (*Id*.). He testified that he could only sit for 15 to 20 minutes and stand only for about 15 to 20 minutes before he had to change position. (*Id*.). He also claims that due to his pain he spends four to five hours a day lying down and resting. (*Id*.). Dr. Ghivan determined that Plaintiff would not be able to return to his previous work again. (R. 67).

Plaintiff also received three knee operations, in which he claims he still suffers from stiffness and pain.[5] (*Id*.). He still has swelling in his knee, and elevates it throughout the day to alleviate the swelling. (*Id*.). The ALJ asked Plaintiff what his pain would be -- with and without his pain medication -- on a scale of one to ten. (*Id*.). Plaintiff responded that his pain without his medication would be a ten, and with medication a seven or eight. (*Id*.).

The VE who testified at his hearing indicated that Plaintiff's job as a warehouse worker was classified as "heavy or very heavy" and had an SVP of 2. (R. 40). The VE then opined that Plaintiff's work as a forklift operator is considered "medium work and is semi-skilled with an

---

[2] Plaintiff underwent C5-6 and C6-C7 anterior cervical discectomy, C5-6 and C6-C7 interbody fusion, and "an internal fixation with an anterior cervical locking plate/Synthes CSLP plate." (R. 220).

[3] The Birmingham surgeon, Dr. Sazarly, performed a posterior cervical laminectomy on Plaintiff. (R. 34, 214).

[4] Plaintiff underwent removal of anterior cervical locking plate. Also, received an anterior cervical discectomy, C$-5 interbody fusion, and "an internal fixation with an anterior cervical locking plate/Synthes CSLP plate." (R. 214).

[5] Plaintiff testifies that his most recent knee surgery was in April 2013, and the two previous ones eight to ten years prior. (R. 35).

3

SVP of 3." (*Id*.). The ALJ presented a hypothetical to the VE, inquiring as to whether a person similarly situated to Plaintiff could perform work at the light level, but with some additional limitations, including

> Pushing and pulling and foot control operation are bilaterally limited to no more than occasional. Climbing of ramps and stairs can be done on a frequent basis with no climbing of ladders, ropes or scaffolds and no more than occasional balancing, stooping, kneeling, crouching, and crawling. Overhead reaching bilaterally is precluded entirely, and no more than occasional exposure to excessive vibration. And this individual would need to avoid any exposure to unprotected heights or the operational control of hazardous and moving machinery.

(R. 40-41). The VE responded that a person such as Plaintiff would not be able to perform any of his past work in the light of the limitations listed in the hypothetical. (*Id*.). However, the VE stated there were other jobs that Plaintiff could perform such as general office clerk, assembler a production worker, and ticket seller and taker. (*Id*.). The ALJ then questioned the VE as to whether if the exertional level was reduced to sedentary, and if the same restrictions applied as indicated in the previous hypothetical, whether that would allow for other work. (*Id*.). The VE stated such a hypothetical person could still work as a general office clerk, receptionist, information clerk, and order clerk. (*Id*.).

The ALJ asked whether an employer would tolerate a person who "because of impairment-caused pain" who needed to take two additional unscheduled breaks, accruing up to four additional breaks per workday. (*Id*.). The VE responded in the negative, stating that an employer would "not usually tolerate more than three" breaks in a day. (*Id*.). The VE also opined that missing two days of work a month would preclude an individual from most jobs, and that when a person is required to change from sitting and standing frequently, that may further limit employment options. (R. 42-45). However, the VE testified that there are still jobs available with those restrictions. (*Id*.).

4

**III.     ALJ Decision**

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. (*Id*.). Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. (*Id*.). If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant

is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). At this point, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ made the determination that Plaintiff had not engaged in any substantial gainful activity since July 25, 2012, his alleged onset date. (R. 63-64). The ALJ further determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016. (*Id.*).

The ALJ further found that Plaintiff suffers from the following severe impairments: status post cervical fusion, gout, osteoarthritis, and status post right knee partial meniscectomy and partial lateral meniscectomy. (*Id.*). The ALJ concluded that the following impairments are non-severe: irritable bowel syndrome (IBS), visual deficiency, and acid reflux. (*Id.*). The ALJ determined that there were no medical findings, or suggestions in the medical record, that any of Plaintiff's impairments, individually or in combination, meet or equal the conditions or severity requirements for any listed impairment. (*Id.*).

Taking into consideration the testimony of the VE, the ALJ determined that Plaintiff is unable to perform any of his past relevant work. (R. 64-67). The ALJ further determined that Plaintiff has the RFC to perform sedentary work with the following exceptions:

> Can occasionally push and pull and operate foot controls bilaterally. The claimant can frequently climb ramps and stairs but never ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can never reach overhead bilaterally and can only have occasional exposure to excessive vibration. The claimant can never work around unprotected heights or operate or control hazardous, moving machinery.

(*Id*.). After consideration of the above factors and the vocational expert's testimony, the ALJ found that Plaintiff, being a younger individual (Plaintiff was 43 years old at the time of his alleged disability onset), with at least a high school education and capable of communicating in English, was able to perform jobs that exist in significant numbers in the national economy, and is therefore not disabled. (R. 68-69).

## IV.   Plaintiff's Argument for Reversal

Plaintiff raises a single issue in this appeal. He argues that the ALJ failed to properly consider the opinion of his neurosurgeon Dr. Ghivan. (Pl.'s Br. 5). More specifically, Dr. Ghivan stated Plaintiff's physical impairment was a "severe limitation of functional capacity; incapable of minimum activity," and that Plaintiff would be "unable to work indefinitely." (R. 408).

Plaintiff argues that the ALJ's interpretation of Dr. Ghivan's comments, as related to just his "prior work and not whether the Plaintiff is disabled or able to do other work," is off the mark. (Pl.'s Br. 6-7). He argues that the ALJ should have given substantial weight to Dr. Gachan's comments, and that they were meant to be a prognosis for all future work and not just previous work. (*Id*.). Plaintiff further alleges that the ALJ should have contacted Dr. Ghivan to clarify his opinions about whether Plaintiff could work at his old job, or any future jobs. (Pl.'s Br. 7-8).

## V.   Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by

"substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**VI.    Discussion**

After careful review, and for the following reasons, the court concludes that the ALJ's decision is due to be affirmed

### A.    The ALJ Properly Considered the Opinion of Plaintiff's Neurosurgeon, Dr. Ghivan, and There Is Substantial Evidence to Support His Decision.

Plaintiff argues that the ALJ did not properly consider the opinion of his neurosurgeon, Dr. Ghivan. The court disagrees. Plaintiff bears the burden of proving that she is disabled. U.S.C. § 423(d)(1)(A), (d)(5); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The ALJ's findings regarding Plaintiff's pain and impairments and his physician's statements are supported by substantial evidence. In deciding Plaintiff's claim, the ALJ considered the six factors under which all medical opinions are evaluated: examining relationship, treatment relationship,

supportability, consistency, specialization, and other factors. 20 C.F.R. § 404.1527. The "opinions reserved to the Commissioner, even from a treating medical source are not entitled to any special significance."[6] (R. 66). (citing 20 C.F.R. § 404.1527(d)(2 and 3)). Dr. Ghivan produced a physician's statement for a private disabilities claim that Plaintiff had with Liberty Mutual Insurance through his former employer Nucor Steel. (R. 407-408). In this statement Dr. Ghivan said that Plaintiff would be unable to work indefinitely. (*Id*.). The ALJ determined that the physician's statement Dr. Ghivan filled out for Liberty Mutual "was clearly solicited to determine whether the claimant could return to his prior work and not whether the claimant is disabled or able to do other work."[7] (R. 67). This finding is reasonable and supported by substantial evidence. Dr. Ghivan referenced Plaintiff's job as a steelworker in many of his treatment notes, whether for expressing hope that Plaintiff could return to his prior work, to allowing him and not allowing to return to his job as a steelworker. (R. 198-203, 220-223, 360).

Plaintiff also argues that the ALJ should have contacted Dr. Ghivan to clarify his opinions regarding Plaintiff's ability to work. The Commissioner "may recontact your treating physician, psychologist, or other medical source. We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence. If we obtain medical evidence over the telephone, we will send the telephone report to the source for review, signature, and return." 20 C.F.R. § 404.1520(c)(1). Our Circuit has held that "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be

---

[6] Issues reserved to the Commissioner are "opinions on the ultimate issue of disability, opinions as to whether impairments meet or equal a medical listing, opinions about RFC, or opinions concerning the application of vocational factors." (R. 67).

[7] This is not a case where the ALJ failed to give substantial weight to a treating physician's opinion. Rather, the ALJ fully credited the treating physician's opinion. But, as the ALJ interpreted the medical record, that opinion was that Plaintiff could not return to his previous work.

remanded to the Secretary for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). Plaintiff has failed to show that he was prejudiced, when the ALJ did not contact Dr. Ghivan

The ALJ did not abuse his discretion in assessing Plaintiff's ability to work when interpreting Dr. Ghivan's statements, or in not following up with Dr. Ghivan. An ALJ "**may**" recontact a treating physician, but is not required to do so if it is determined there is sufficient enough evidence to make a decision. 20 C.F.R. § 404.1520(c)(1) (emphasis added). Here, no legal error was made, and the ALJ's findings are supported by substantial evidence.

### VII. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this June 22, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE